THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY C. STANCEU, JUDGE

_____

|  |  |  |
|---|---|---|
| WHEATLAND TUBE CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 22-00004 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## **ORDER**

On consideration of defendant's motion to dismiss this action for lack of subject-matter jurisdiction, plaintiff's motion for a preliminary injunction, plaintiff's petition for a writ of mandamus, and all responses thereto, it is hereby

ORDERED that defendant's motion to dismiss is granted; and it is further

ORDERED that plaintiff's motion for a preliminary injunction is denied; and it is further

ORDERED that plaintiff's petition for a writ of mandamus is denied, and it is further

ORDERED that this action is dismissed.


Dated: _____          _____
       New York, NY                           JUDGE

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| _____ ) | |
| WHEATLAND TUBE CO.,                    ) | |
|                                        ) | |
|              Plaintiff,                ) | |
|                                        ) | |
|       v.                               ) | Court No. 22-00004 |
|                                        ) | Judge Stanceu |
| UNITED STATES,                         ) | |
|                                        ) | |
|              Defendant.                ) | |
|                                        ) | |
| _____ ) | |

---

**DEFENDANT'S COMBINED MOTION TO DISMISS, RESPONSE
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION, AND
RESPONSE TO PLAINTIFF'S PETITION FOR A WRIT OF MANDAMUS**

---

BRIAN M. BOYNTON
Acting Assistant Attorney General


PATRICIA M. MCCARTHY
Director


TARA K. HOGAN
Assistant Director

OF COUNSEL:

MATHIAS RABINOVITCH                 ANTONIA R. SOARES
Attorney                            Senior Trial Counsel
Office of the Assistant Chief Counsel   Department of Justice
U.S. Customs and Border Protection  Civil Division
                                    Commercial Litigation Branch
                                    P.O. Box 480, Ben Franklin Station
                                    Washington, DC 20044
                                    antonia.soares@usdoj.gov


February 2, 2022                    Attorneys for Defendant

## <u>TABLE OF CONTENTS</u>

QUESTIONS PRESENTED....................................................................................2

BACKGROUND ..................................................................................................2

    I.    The President's Proclamations Adjusting Imports Of Steel To Protect National Security And Directing Commerce To Establish An Exclusion Process ...................2

        A.  Proclamations 9705 And 9759...............................................................3

        B.  Proclamation 9894 ...............................................................................3

    II.    Requests For Information And Requests For Classification Rulings .........................4

    III.    February 2020 Customs Ruling Letter Concerning The Classification Of Steel Conduit Pipe From Thailand...................................................................................6

    IV.    The May 2020 *Shamrock* Action In This Court Challenging Customs' Classification.........................................................................................................6

    V.    Wheatland's December 2020 And January 2021 Requests To Customs....................7

    VI.    Customs' January 2021 And April 2021 Responses To Wheatland's Requests ........8

    VII.    Wheatland's Pending Motion Seeking Injunctive And Mandamus Relief.................10

SUMMARY OF THE ARGUMENT .......................................................................11

ARGUMENT ......................................................................................................13

    I.    Legal Standards....................................................................................................13

        A.  Motion To Dismiss Pursuant To USCIT R. 12(b)(1) ............................13

        B.  Motion To Dismiss Pursuant To USCIT R. 12(b)(6) ............................14

        C.  Preliminary Injunctions........................................................................15

    II.    The Court Does Not Possess Jurisdiction To Grant Wheatland Injunctive Or Mandamus Relief Because Its Claims Are Moot.....................................................16

        A.  Legal Standard ....................................................................................16

        B.  Customs Responded To Wheatland's December 2020 Request.............17

     C.  Customs Responded To Wheatland's January 2021 Request ............................... 19

III.    Wheatland Has Not Demonstrated That It Is Entitled To Injunctive Relief .............. 20

     A.  Wheatland Has Failed To Establish A Likelihood Of Success On The Merits .... 21

         1.  Wheatland Fails To State A Claim For A Violation Of Section 1516(a)(1) Because Customs Responded To Wheatland's December 11, 2020 Request For A Classification And Rate Of Duty ............................................ 21

         2.  Customs Lawfully Refused Wheatland's January 7, 2021 Request To Reconsider The Customs Ruling Letter Because The Classification Issue Is Pending Before This Court ......................................................................... 23

     B.  Wheatland Has Not Demonstrated The Likelihood Of Irreparable Harm ........... 25

     C.  The Balance Of Hardships Weighs In Favor Of Denying Wheatland's Motion ................................................................................................................... 31

     D.  The Public Interest Factor Weighs In Favor Of Denying Wheatland's Motion ................................................................................................................... 33

     E.  Wheatland Should Be Required To Post Security In The Event Injunctive Relief Is Granted .............................................................................................. 34

IV.    The Court Should Deny Wheatland's Petition For A Writ Of Mandamus ................ 35

CONCLUSION ................................................................................................................ 38

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Am. Inst. for Imported Steel Inc. v. United States,*
   600 F. Supp. 204 (Ct. Int'l Trade 1984) .................................................................... 23

*Am. Spring Wire Corp. v. United States*,
   578 F. Supp. 1405 (Ct. Int'l Trade 1984) .................................................................. 25

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
   239 F.3d 1343 (Fed. Cir. 2001) ............................................................................... 12

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
   678 F.3d 1314 (Fed. Cir. 2012) ............................................................................... 27

*Arbaugh v. Y&H Corp.*,
   546 U.S. 500 (2006) ................................................................................................ 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................ 11

*Asia Vital Components Co. v. Asetek Danmark A/S*,
   837 F.3d 1249 (Fed. Cir. 2016) ............................................................................... 10

*Autoalliance Int'l, Inc. v. United States*,
   398 F. Supp. 2d 1326 (Ct. Int'l Trade 2005) ........................................................... 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................ 11

*Browning v. Clinton*,
   292 F.3d 235 (D.C. Cir. 2002) ................................................................................ 11

*Cedars-Sinai Med. Ctr. v. Watkins*,
   11 F.3d 1573 (Fed. Cir. 1993) ................................................................................. 10

*Chafin v. Chafin*,
   568 U.S. 165 (2013) ................................................................................................ 14

*Cheney v. U.S. Dist. Ct. for D.C.*,
   542 U.S. 367 (2004) ........................................................................................... 13, 31

*Clinton v. Goldsmith*,
    526 U.S. 529 (1999) ................................................................................ 32

*Confederacion de Asociaciones Agricolas del Estado de Sinaloa, A.C. v. United States*,
    389 F. Supp. 3d 1386 (Ct. Int'l Trade 2019) ................................................ 24, 25

*Corus Group PLC v. Bush*,
    217 F. Supp. 2d 1347 (Ct. Int'l Trade 2002) ............................................... 25

*Depersia v. United States*,
    637 F. Supp. 2d 1244 (Ct. Int'l Trade 2009) ............................................... 22

*Design Int'l Grp., Inc. v. United States*,
    113 F. Supp. 3d 1342 (Ct. Int'l Trade 2015) ............................................... 10

*Elkem Metals Co. v. United States*,
    135 F. Supp. 2d 1324 (Ct. Int'l Trade 2001) ............................................... 23

*Fresh Garlic Producers Association v. United States*,
    190 F.Supp. 3d 1302 (Ct. Int'l Trade 2016) ............................................... 13

*Gemveto Jewelry Co. v. Jeff Cooper Inc.*,
    800 F.2d 256 (Fed. Cir. 1986) ................................................................. 31

*Genesis Healthcare Corp. v. Symczyk*,
    569 U.S. 66 (2013) ................................................................................ 15

*Hawpe Const., Inc. v. United States*,
    46 Fed. Cl. 571 (2000) ........................................................................... 27

*High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.*,
    49 F.3d 1551 (Fed. Cir. 1995) ................................................................. 27

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009) ............................................................... 13

*Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC*,
    938 F.3d 1355 (Fed. Cir. 2019) ............................................................... 10

*Int'l Customs Prods. v. United States*,
    467 F.3d 1324 (Fed. Cir. 2006) ........................................................ 27, 30, 33

*Int'l Fresh Corp. v. United States*,
    26 F. Supp. 3d. 1363 (Ct. Int'l Trade 2014) ............................................... 24

*Iron Arrow Honor Society v. Heckler,*
   464 U.S. 67 (1983) ..................................................................................... 15

*J. Conrad LTD v. United States,*
   457 F.Supp. 3d 1365 (Ct. Int'l Trade 2020) ............................................. 26

*Kellogg Brown & Root Servs., Inc. v. United States,*
   728 F.3d 1348 (Fed. Cir. 2013) ................................................................ 11

*Kerr v. U.S. Dist. Court for N. Dist. of Cal.,*
   426 U.S. 394 (1976) ................................................................................. 13

*Kwo Lee, Inc. v. United States,*
   24 F. Supp. 3d 1322 (Ct. Int'l Trade 2014) ............................................. 23

*Mallard v. U.S. Dist. Court for the S. Dist. of Iowa,*
   490 U.S. 296 (1989) ................................................................................. 13

*Mazurek v. Armstrong,*
   520 U.S. 968 (1997) ................................................................................. 12

*Munaf v. Geren,*
   553 U.S. 674 (2008) ........................................................................... 12, 14

*National Corn Growers Ass'n v. Baker,*
   636 F.Supp. 921 (Ct. Int'l Trade 1986),
   *rev'd on other grounds*, 840 F.2d 1547 (Fed. Cir. 1988) ......................... 22

*North Carolina v. Rice,*
   404 U.S. 244 (1971) ................................................................................. 14

*Oakland Tribune Inc. v. Chronicle Publ'g Co., Inc.,*
   762 F.2d 1374 (9th Cir.1985) ................................................................... 28

*Otter Prod., LLC v. United States,*
   37 F. Supp. 3d 1306 (Ct. Int'l Trade 2016) ......................................... 12, 23

*Qingdao Barry Flooring Co., Ltd. v. United States,*
   190 F. Supp. 3d 1274 (Ct. Int'l Trade 2016) ................................... *passim*

*Qingdao Taifa Grp. Co. v. United States,*
   581 F.3d 1375 (Fed. Cir. 2009) ................................................................ 12

*Rack Room Shoes v. United States*,
   718 F.3d 1370 (Fed. Cir. 2013) ................................................................. 11

*Riles v. Shell Expl. & Prod. Co.*,
   298 F.3d 1302 (Fed. Cir. 2002) ................................................................. 31

*Shamrock Building Materials, Inc. v. United States*,
   No. 20-00074 (Ct. Int'l Trade) ......................................................... *passim*

*Shamrock Building Materials, Inc. v. United States*,
   540 F. Supp. 3d 1351 (Ct. Int'l Trade 2020) ......................................... 5, 26

*Shandong Dongfang Bayley Wood Co., Ltd. v. United States*,
   236 F. Supp. 3d 1346 (Ct. Int'l Trade 2017) ........................................... 32

*Shandong Huarong Gen. Group Corp. v. United States*,
   122 F. Supp. 2d 143 (Ct. Int'l Trade 2000) ............................... 12, 23, 24

*Sumecht NA, Inc. v. United States*,
   331 F. Supp. 3d 1408 (Ct. Int'l Trade 2018),
   *aff'd*, 923 F.3d 1340 (Fed. Cir. 2019) .................................... 12, 23, 24

*Transpacific Steel LLC v. United States*,
   4 F.4th 1306 (Fed. Cir. 2021) ..................................................................... 2

*Timken Co. v. United States*,
   893 F.2d 337 (Fed. Cir. 1990) ................................................................. 32

*U.S. Ass'n of Importers of Textiles & Apparel v. United States*,
   413 F.3d 1344 (Fed. Cir. 2005) ................................................................. 14

*Ugine & Alz Belg. v. United States*,
   452 F.3d 1289 (Fed. Cir. 2006) ................................................................. 12

*United Pac. Ins. Co. v. United States*,
   464 F.3d 1325 (Fed. Cir. 2006) ................................................................. 10

*United States v. Cotton*,
   535 U.S. 625 (2002) ................................................................................. 10

*Verson v. United States*,
   5 F. Supp. 2d 963 (Ct. Int'l Trade 1998) ............................................... 15

*Vivitar Corp. v. United States,*
  593 F. Supp. 420 (Ct. Int'l Trade 1984) ........................................................ 22

*Weinberger v. Romero-Barcelo,*
  456 U.S. 305 (1982) ...................................................................................... 29

*Wind Tower Trade Coal. v. United States,*
  741 F.3d 89 (Fed. Cir. 2014) ........................................................................ 13

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ..................................................................................... 12, 13

*Wuxi Seamless Oil Pipe Co., Ltd. v. United States,*
  780 F. Supp. 2d 1337 (Ct. Int'l Trade 2011) ................................................ 11

*Zenith Radio Corp. v. United States,*
  710 F.2d 806 (Fed. Cir. 1983) ............................................................ 23, 24, 26

## **<u>Statutes</u>**

18 U.S.C. § 1905 ....................................................................................................... 7

19 U.S.C. § 1516(a) ........................................................................................... *passim*

19 U.S.C. § 1516(a)(1) ...................................................................................... *passim*

19 U.S.C. § 1625(c) ............................................................................................. 8, 17

19 U.S.C. § 1862 ....................................................................................................... 2

28 U.S.C. § 1361 ..................................................................................................... 13

28 U.S.C. § 1581(i) ................................................................................................. 32

28 U.S.C. § 1585 ..................................................................................................... 13

28 U.S.C. § 1651(a) ................................................................................................ 13

## **<u>Rules</u>**

USCIT R. 12(b)(1) ..................................................................................................... 1

USCIT R. 12(b)(6) ............................................................................................. 10, 18

USCIT R. 65(a) ................................................................................................ 1

USCIT R. 65(c) .............................................................................................. 30

## **Regulations**

19 C.F.R. § 175.1 ........................................................................................... 5

19 C.F.R. § 175.2 ........................................................................................... 5

19 C.F.R. § 175.11 ......................................................................................... 6

19 C.F.R. § 175.12 ......................................................................................... 6

19 C.F.R. § 177 .............................................................................................. 4

19 C.F.R § 177.0 ........................................................................................... 8

19 C.F.R. § 177.12 ............................................................................. 8, 17, 21

19 C.F.R. § 177.7 ................................................................................... 8, 22

19 C.F.R. § 177.7(a) ...................................................................................... 22

19 C.F.R. § 177.7(b) .............................................................................. *passim*

19 C.F.R. § 177.7(d) ...................................................................................... 9

## **Other Authorities**

U.S. Const. art. III, § 2 ................................................................................. 14

*Proclamation 9705, Adjusting Imports of Steel Into the United States*,
   83 Fed. Reg. 11,625 (Mar. 8, 2018) ......................................................... 3

*Proclamation 9894 of May 19, 2019*,
   84 Fed. Reg. 23,987 (May 23, 2019) ........................................................ 3

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY C. STANCEU, JUDGE

_____
                                                    )
WHEATLAND TUBE CO.,                )
                                                    )
                        Plaintiff,            )
                                                    )
            v.                                   )            Court No. 22-00004
                                                    )
UNITED STATES,                           )
                                                    )
                        Defendant.         )
                                                    )
_____)

### DEFENDANT'S COMBINED MOTION TO DISMISS, RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION, AND <u>RESPONSE TO PLAINTIFF'S PETITION FOR A WRIT OF MANDAMUS</u>

Pursuant to Rule 12(b)(1) and Rule 65(a) of the Rules of the United States Court of International Trade (USCIT R.), defendant, the United States, respectfully submits this motion to dismiss for lack of subject-matter jurisdiction and response in opposition to the motion for a preliminary injunction and petition for writ of mandamus filed by plaintiff, Wheatland Tube Co. (Wheatland).[1]  As demonstrated below, this Court lacks jurisdiction to entertain this action on the grounds of mootness.  In the event the Court determines it possesses jurisdiction, Wheatland has failed to demonstrate that it is entitled to the extraordinary injunctive and mandamus relief it

---

[1]  Wheatland's complaint (ECF No. 4) is referenced as "Compl."; its memorandum of points and authorities in support of its motion for a preliminary injunction (ECF Nos. 8, 8-1) is referenced as "Pl. Mot."; the affidavit of Jim Hays (ECF No. 9), which was submitted in support of Wheatland's motion, is referenced as "Hays Aff."; and its petition for a writ of mandamus (ECF No. 7) is referenced as "Pl. Writ."

seeks.  Accordingly, we respectfully request that the Court deny Wheatland's motion for injunctive relief and its petition for a writ of mandamus, and dismiss this action.

## QUESTIONS PRESENTED

1.      Whether this case should be dismissed as moot because Customs has already responded to Wheatland's December 2020 request for information pursuant to 19 U.S.C. § 1516(a)(1) and its January 2021 petition for a tariff classification ruling pursuant to 19 U.S.C. § 1516(a).

2.      Alternatively, whether Wheatland's motion for a preliminary injunction should be denied because it fails to demonstrate it is entitled to such relief under the governing four-factor test.

3.      Whether, assuming this Court possesses jurisdiction to hear this action, the Court should deny Wheatland's petition for a writ of mandamus because it has failed to show that it is entitled to this extraordinary relief.

## BACKGROUND

**I.      The President's Proclamations Adjusting Imports Of Steel To Protect National Security And Directing Commerce To Establish An Exclusion Process**

In section 232 of the Trade Expansion Act of 1962, Pub. L. No. 87-794, 76 Stat. 872, 877, codified as amended at 19 U.S.C. § 1862, Congress provided that if the President receives, and agrees with, a finding by a specified executive officer (now the Secretary of Commerce) that imports of an article threaten to impair national security, the President shall take action that the President deems necessary to alleviate the threat from those imports.  *Transpacific Steel LLC v. United States*, 4 F.4th 1306, 1309 (Fed. Cir. 2021).  Through a series of proclamations, the President imposed Section 232 duties on the import of steel articles into the United States.  *Id.*

The President also granted the Secretary of Commerce the discretion to provide relief, in the form of exclusions, from the tariffs under certain circumstances.

A.   <u>**Proclamations 9705 And 9759**</u>

In Proclamation 9705, the President established a 25 percent tariff on imports of steel articles, effective March 23, 2018.  *Proclamation 9705, Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 11,625, clause 2 (Mar. 8, 2018) (Proclamation 9705).  The President further established that steel articles subject to the tariff "are defined at the Harmonized Tariff Schedule … 6-digit level as: 7206.10 through 7216.50, 7216.99 through 7301.10, 7302.10, 7302.40 through 7302.90, and 7304.10 through 7306.90, including any subsequent revisions to these HTS classifications."  Proclamation 9705, clause 1.  All articles specified in the Annex are subject to Section 232 tariffs in addition to any other applicable duties.  Proclamation 9705, clause 2.  Articles imported under heading HTSUS 8547 are not subject to Section 232 duties. With respect to imports from Canada and Mexico, the President determined that it would be "necessary and appropriate . . . to continue ongoing discussions . . . and to exempt steel articles imports from these countries from the tariff, at least at this time."  *Id.* at 11,626 ¶ 10.

On May 31, 2018, the President issued Proclamation 9759, announcing the outcome of those negotiations.  *Proclamation 9759*, 83 Fed. Reg. 20,683, 20,684, clause 1 (May 7, 2018). Although the President announced the results of negotiations with other countries, having failed to reach an arrangement with Canada and Mexico, the President omitted any mention of a continued exemption for those countries and ultimately allowed the enacted 25 percent tariff in Proclamation 9705 to take effect with respect to those countries' imports.

### B. Proclamation 9894

On May 19, 2019, the President proclaimed that the United States had come to agreements with Canada and Mexico on "satisfactory alternative means to address the threatened impairment of the national security posed by steel articles imports{.}" Proclamation 9894 of May 19, 2019, 84 Fed. Reg. 23,987, 23,987 ¶ 5 (May 23, 2019). The agreed-upon measures included provisions "to monitor for and avoid import surges." *Id.* Therefore, the President "exclude{d} Canada and Mexico from the tariff proclaimed in Proclamation 9705, as amended." *Id.* at 23,988-89 ¶ 6, cl. 1.

## II. Requests For Information And Requests For Classification Rulings

Requests for information regarding classifications are governed by 19 U.S.C. § 1516, which provides, in pertinent part:

> The Secretary shall, upon written request by an interested party furnish the classification and the rate of duty imposed upon designated imported merchandise of a class or kind manufactured, produced, or sold at wholesale by such interested party. If the interested party believes that the appraised value, the classification, or rate of duty is not correct, it may file a petition with the Secretary{.}

19 U.S.C. § 1516(a)(1); *see also National Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1551 (Fed. Cir. 1988) (analyzing same); 19 C.F.R. § 175.0 ("This part sets forth the procedures applicable to requests by domestic interested parties for the classification and rate of duty applicable to designated imported merchandise, and to petitions alleging that the appraised value is too low, that the classification is not correct, or that the proper rate of duty is not being assessed upon designated imported merchandise which is claimed to be similar to the class or kind of merchandise manufactured, produced, or wholesaled by the petitioner.").

Customs' authority to issue rulings is governed by 19 C.F.R. § 177.1, which provides in pertinent part, as follows:

> the Customs Service will give full and careful consideration to written requests from importers and other interested parties for rulings or information setting forth, with respect to a specifically described transaction, a definitive interpretation of applicable law, or other appropriate information.

19 C.F.R. § 177.1(a)(1); *see also Southern Shrimp Alliance v. United States*, 617 F. Supp. 2d 1334, 1353 (Ct. Int'l Trade 2009) ("In Part 177 of the Customs regulations ('Part 177'), Customs has promulgated, as 'Subpart A—General Ruling Procedure,' . . . a detailed set of procedures to govern broadly requests for, issuance of, and the legal effect of, Customs' administrative rulings.") (citing 19 C.F.R. §§ 177.1-13)).  The regulations define a "ruling" as "a written statement issued by the Headquarters Office or the appropriate office of Customs as provided in this part that interprets and applies the provisions of the Customs and related laws to a specific set of facts."  19 C.F.R. § 177.1(d)(1).  The regulations define a "ruling letter" as a "ruling issued in response to a written request . . . and set forth in a letter addressed to the person making the request or his designee."  *Id.*

Customs' authority to modify or revoke a classification ruling is governed by 19 C.F.R. § 177.12, which permits modification or revocation if a ruling is "found to be in error or not in accord with the current views of Customs{.}"  19 C.F.R. § 177.12; *see also* 19 U.S.C. § 1625(c) (stating that a proposed ruling that would modify or revoke a prior ruling must be published in the Customs Bulletin and that parties be allowing an opportunity to comment).  However, Customs will not issue a modification or revocation when the classification issue is pending before this Court:  "No ruling letter will be issued with respect to any issue which is pending

before the United States Court of International Trade, the United States Court of Appeals for the

Federal Circuit or any court of appeal therefrom."  19 C.F.R. § 177.7(b)).

## III.     February 2020 Customs Ruling Letter Concerning The Classification Of Steel Conduit Pipe From Thailand

Pursuant to 19 C.F.R. § 177, on September 30, 2019, an importer requested a ruling

related to the tariff classification of certain steel conduit pipe from Thailand.  *See* Customs

Ruling Letter N306508 (Feb. 21, 2020) (A1).[2]  On February 21, 2020, Customs issued a ruling

letter responding to that request. *Id.*  In that letter, Customs identified the merchandise as

EMT/UL797 white conduit tubing, which is made up of steel with an exterior coating of zinc and

an interior coating of stoved epoxy resin and would be imported at various lengths and

thicknesses.  *Id.*  In terms of its use, Customs explained that the tubing will act as electrical wire

conduit in both commercial and residential environments.  *Id.*

Customs found that EMT/UL79's interior coating is made up of an organic resin

compound, which would act as an electrical insulator.  *Id.*  Because HTS 8547 required that

conduit tubing classified under that heading must be electrically insulating, Customs found that

the subject goods fell within the heading, and concluded that the applicable subheading for the

EMT/UL797 white conduit tubing would be 8547.90.0020.  *Id.*

## IV.    The May 2020 *Shamrock* Action In This Court Challenging Customs' Classification

In April 2020, Shamrock Building Materials, Inc. commenced an action in this Court,

filing a complaint in May 2020.  *See* Pl. Mot. Ex. 2 (attached thereto as Ex. 1); *see also* Compl.,

*Shamrock Building Materials, Inc. v. United States*, No. 20-00074 (Ct. Int'l Trade), ECF No. 10

(*Shamrock* Compl.).  In that action, Shamrock challenges Customs' denial of its protests

---

[2]  "A__" is a page of the appendix accompanying this brief.

contesting the liquidation of its entries pursuant to Form 29 Notices of Action "advising {Shamrock} that CBP had concluded that the more appropriate classification for {Shamrock's} entries of finished conduit is 7306.30.5028, and instruct{ing} {Shamrock} to use this classification for all current and future entries." *Shamrock* Compl. ¶ 46; *id.* ¶ 40 (substantially same); *see also Shamrock Building Materials, Inc. v. United States*, 540 F. Supp. 3d 1351, 1352 (Ct. Int'l Trade 2020) ("Shamrock brought this action to contest the denial by U.S. Customs and Border Protection ('Customs') of its protests directed to the tariff classification by Customs of its imported merchandise, which Shamrock describes as "certain electrical conduit.").

## V.    **Wheatland's December 2020 And January 2021 Requests To Customs**

On December 11, 2020, Wheatland requested that Customs furnish Wheatland with the "classification and rate of duty or export license requirement imposed upon imports of steel conduit pipe from Mexico" pursuant to 19 U.S.C. § 1516(a)(1) and 19 C.F.R. § 175.1.  Pl. Mot. Ex. 2.  In its submission, Wheatland identified data suggesting that two importers, Shamrock Building Materials, Inc. (Shamrock Steel) and Liberty Products Inc. doing business as Rymco U.S.A. (Rymco), had imported electrical conduit pipe under heading HTS 8547.90.00 after the imposition of Section 232 duties and export licensing requirements on articles of heading HTS 7306 from Mexico.  *Id.*  Wheatland's submission provided information required by 19 C.F.R. § 175.2.  Specifically, Wheatland identified the "imported merchandise for which the classification is requested" as "steel conduit pipe imported from Mexico, with or without interior coating, where any such coating does not have insulation properties."  *Id.*  Wheatland's request covered merchandise described as "electrical metallic tubing finished conduit ('EMT'), intermediate metal conduit ('IMC'), {and} rigid metal conduit ('RMC')" and identified Shamrock and Rymco products, citing to the complaint in the pending *Shamrock* action.  *Id.*

On January 7, 2021, Wheatland submitted a request, styled as a "Petition for Tariff Classification Ruling Regarding Steel Conduit Pipe," in which Wheatland sought to have Customs issue a determination regarding the correct classification of certain steel conduit pipe pursuant to 19 U.S.C. § 1516(a)(1) and 19 C.F.R. § 175.11.  *See* Pl. Mot. Ex. 3.  Wheatland's January 7 submission provided information required by 19 C.F.R. § 175.12, and requested that Shamrock's and Rymco's conduit be reclassified under HTS 7306.30.5028.  *Id.*  As part of its request, Wheatland also requested that Customs reconsider the decision concerning the classification of steel conduit pipe from Thailand in Customs Ruling Letter N306508.  *Id.*

## VI.    Customs' January 2021 And April 2021 Responses To Wheatland's Requests

In response to Wheatland's December 11, 2020 request, on January 22, 2021, Customs informed Wheatland that it had liquidated entries of certain steel conduit pipe imported by Shamrock between April 26, 2019, through July 19, 2019 — those at issue in the *Shamrock* action — under either subheading HTS 7306.30.10 or 7306.30.50, depending on whether the wall thickness of the pipe was less than 1.65 mm.  A2.  Customs also informed Wheatland that Shamrock had filed an action in this Court challenging Customs' classification of its steel conduit pipe from Mexico under heading 7306.  *Id.* (citing *Shamrock Building Materials, Inc. v. United States*, No. 20-00074).  Customs further explained that, due to this pending litigation, the issue of the classification of steel conduit pipe was pending before, and would be decided by, this Court.  *Id.*

On February 22, 2021, Wheatland responded, asserting that, although "we are aware that CBP has previously addressed imports of conduit pipe from Mexico by Shamrock that were not properly classified under HTS 7306.30{,}" the date of those entries "between April 26, 2019, and July 19, 2019, are ***not*** the subject of Wheatland's December 11, 2020 classification request."

A3 (emphasis in the original).  Based on this temporal distinction, Wheatland stated that "{w}e

therefore consider Wheatland's December 11, 2020 classification request to be still open and

pending before the agency and respectfully request CBP to take further action on this matter."

A4.  In particular, Wheatland sought the following specific information about Shamrock and

RYMCO USA:

> 1.  Under what tariff classification have Shamrock's imports of
>     steel conduit pipe been entered since August 31, 2020 to the
>     present?
>
> 2.  Under what tariff classification have RYMCO USA's imports
>     of steel conduit pipe been entered since August 31, 2020 to the
>     present?

*Id.*

In an April 9, 2021 letter, Customs informed Wheatland that, to the extent it was

requesting information concerning Shamrock's and RYMCO's specific entries of steel conduit

pipe, Customs could not disclose such information pursuant to the Trade Secrets Act, 18 U.S.C.

§ 1905.  Pl. Mot. Ex. 7.  Customs also informed Wheatland that its request failed to clearly frame

a proper request under 19 U.S.C. § 1516(a) because it requested information on Shamrock and

Rymco's specific entries of steel conduit pipe, rather than the "classification and the rate of duty

imposed upon designated imported merchandise" pursuant to 19 U.S.C. § 1516(a).  *Id.*  To the

extent that Wheatland sought information regarding the designated imported merchandise

described as "steel conduit pipe imported from Mexico, with or without interior coating, where

any such coating does not have insulation properties," Customs indicated that its "position is that

the merchandise is classified in heading 7306, HTSUS, irrespective of the date of entry."  *Id.*

Customs also explained that it was "currently defending that position in" the *Shamrock* litigation.

*Id.*

In the April 9 letter, Customs also responded to Wheatland's January 7 request for reconsideration of Customs Ruling Letter N306508 concerning the classification of steel conduit pipe from Thailand.  *Id.*  Revocations or modifications of prior rulings may be issued pursuant to 19 U.S.C. § 1625(c) and 19 C.F.R. § 177.12.  Although agreeing with Wheatland's position regarding the classification of steel conduit pipe with non-insulating inner coating, Customs stated that it was precluded by law from reconsidering Customs Ruling Letter N306508 because the classification of such merchandise was pending before this Court in *Shamrock*.  *Id.* Specifically, Customs explained that, under 19 C.F.R. § 177.7, which governs "{s}ituations in which no ruling will be issued," Customs may not issue a ruling letter, including a revocation letter, "with respect to any issue which is pending before the United States Court of International Trade{.}"  *Id.* (quoting 19 C.F.R. § 177.7(b)).

## VII.   Wheatland's Pending Motion Seeking Injunctive And Mandamus Relief

On January 12, 2022, Wheatland filed a complaint pursuant to the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 *et seq.*, alleging that it was entitled to a writ of mandamus to compel Customs to respond to Wheatland's December 11, 2020 request for information pursuant to 19 U.S.C. § 1516(a)(1) and its January 7, 2021 petition for a tariff classification ruling pursuant to 19 U.S.C. § 1516(a).  Comp. ¶ 1, ECF No. 4.  Wheatland also alleged that it was entitled to a preliminary injunction enjoining the United States from making or permitting liquidation of any unliquidated entries of steel conduit pipe improperly classified under the HTS 8547.90 for the pendency of the litigation and until such time as Customs has responded to Wheatland's December 11, 2020 request for information and January 7, 2021 petition for tariff classification ruling.  *Id.*

In addition to filing its complaint, on January 12, 2022, Wheatland filed a motion for preliminary injunction seeking to enjoin Customs from permitting liquidation of any unliquidated entries of steel conduit pipe entered into the United States under HTS 8547.90, for the pendency of this litigation until such time as Customs has responded to Wheatland's December 11, 2020 request for information pursuant to 19 U.S.C. § 1516(a)(1) and its January 7, 2021 petition for a tariff classification ruling pursuant to 19 U.S.C. § 1516(a).  Pl. Mot., ECF Nos. 8, 8-1.  On the same day, Wheatland filed a petition for a writ of mandamus seeking to have this Court compel Customs to respond to its December 11, 2020 request for information under 19 U.S.C. § 1516(a)(1) and its January 7, 2021 petition for tariff classification ruling under 19 U.S.C. § 1516(a).  Pl. Writ, ECF No. 7.

## SUMMARY OF THE ARGUMENT

This Court should dismiss the complaint for lack of subject-matter jurisdiction, and deny Wheatland's motion for a preliminary injunction and petition for writ of mandamus.

This Court lacks jurisdiction to grant any relief, let alone the injunctive and mandamus relief Wheatland seeks, because Wheatland's claims are moot.  Customs has already responded to Wheatland's December 2020 request for information pursuant to 19 U.S.C. § 1516(a)(1) and its January 2021 petition for a tariff classification ruling pursuant to 19 U.S.C. § 1516(a). Customs responded to the December 2020 request by informing Wheatland that it agreed with Wheatland as to the correct classification of the steel conduit pipe at issue, and was defending that legal position in the pending *Shamrock* litigation.  Customs also responded to Wheatland's January 2021 request seeking reconsideration of the Customs Ruling Letter by informing Wheatland that, pursuant to 19 C.F.R. § 177.7(d), Customs was precluded from reconsidering the Customs Ruling Letter because that classification issue was pending before this Court in the

11

*Shamrock* litigation.  Because Wheatland has already received all the relief to which it is legally entitled, there is no further relief that this Court can grant, and this action should be dismissed.

Even if the Court concludes that it possesses jurisdiction to consider this action, Wheatland raises claims of harm for which this Court cannot provide redress through a preliminary injunction.  The purpose of a preliminary injunction is to preserve the status quo and prevent irreparable harm to a plaintiff while its suit is pending, thereby preserving the Court's ability to render a meaningful judgment on the merits.  Although couching its claims in terms of Customs' alleged failure to respond to its December 2020 and January 2021 requests, at bottom, Wheatland's alleged harm claims are based on what it views as the ineffective monitoring of imports and enforcement of the President's national security measures on imported steel.  Those harms, even if accepted as true, however, are untethered to any alleged failure by Customs to respond to Wheatland's requests.  Thus, there is no basis for preliminary injunctive relief.  In fact, the injunctive relief that Wheatland seeks — the suspension of liquidation during the pendency of this litigation — will do nothing to stem the harm Wheatland claims from the ineffective monitoring of imports and enforcement of the President's national security measures.

Further, this Court plays no role in assessing whether the import monitoring program is effective; that is a judgment call left entirely within the President's discretion.  *See Proclamation 9705*, 83 Fed. Reg. at 11,628 (directing the Secretary of Commerce to monitor imports and advise the President if additional action is necessary); *Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1349 (Fed. Cir. 2018) (explaining that the President's exercise of judgment and findings of fact are not subject to judicial review).

Even if Wheatland could tether its harm claims to the injunctive relief it seeks, the Court should deny the requested relief because Wheatland has not satisfied the four-factor test for such

extraordinary relief.  Specifically, Wheatland has failed to make any showing, let alone the required clear showing, that:  (i) it will suffer irreparable harm if Customs is not enjoined; (ii) that it is likely to succeed on the merits of its claim that Customs failed to respond to its December 2020 and January 2021 requests; (iii) that the public interest would be better served if the Court grants the preliminary injunction; and (iv) that the balance of hardships favors Wheatland.

The Court should also deny Wheatland's petition for a rit of mandamus because it has failed to demonstrate it is entitled to such extraordinary relief.  In particular, Wheatland has failed to show that Customs had a clear duty that it has failed to perform.  As discussed above, Customs responded to Wheatland's December 2020 and January 2021 requests.

## ARGUMENT

## I.   Legal Standards

### A.   Motion To Dismiss Pursuant To USCIT R. 12(b)(1)

Subject-matter jurisdiction "involves a court's power to hear a case, {and} it can never be forfeited or waived."  *United States v. Cotton,* 535 U.S. 625, 630 (2002).  "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

Plaintiff bears the burden to demonstrate that subject-matter jurisdiction exists.  *Design Int'l Grp., Inc. v. United States*, 113 F. Supp. 3d 1342, 1344 (Ct. Int'l Trade 2015) (citations omitted).  Whether jurisdiction exists is a question of law for the Court.  *Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC*, 938 F.3d 1355, 1360 (Fed. Cir. 2019) (citation omitted).  "In establishing the predicate jurisdictional facts, a court . . . may review evidence extrinsic to the

pleadings, including affidavits and deposition testimony." *Asia Vital Components Co. v. Asetek Danmark A/S*, 837 F.3d 1249, 1254 n.2 (Fed. Cir. 2016) (quoting *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993)); *see also Autoalliance Int'l, Inc. v. United States*, 398 F. Supp. 2d 1326, 1332 (Ct. Int'l Trade 2005) (same).

### B.   Motion To Dismiss Pursuant To USCIT R. 12(b)(6)

A motion to dismiss for failure to state a claim is appropriate when a plaintiff's allegations do not entitle it to a remedy.  *See United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327 (Fed. Cir. 2006).  The motion "tests the legal sufficiency of a complaint," *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002), which must be dismissed if it fails to present a legally cognizable right of action, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"In deciding a motion to dismiss, the court must accept well-pleaded factual allegations as true and must draw all reasonable inferences in favor of the claimant," *Kellogg Brown & Root Servs., Inc. v. United States*, 728 F.3d 1348, 1365 (Fed. Cir. 2013), but need not accept legal conclusions contained in the same allegations, *Twombly*, 550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 555 U.S. at 557) (alteration in original); *see also Rack Room Shoes v. United States*, 718 F.3d 1370, 1376 (Fed. Cir. 2013) (same).

Dismissal is required when a complaint fails to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "Determining whether a complaint states a plausible claim for relief [is]…a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Although

courts will primarily consider the allegations in a complaint when considering a motion to dismiss for failure to state a claim, courts may also consider "facts…in documents appended to the complaint or incorporated in the complaint by reference, and to matters for which judicial notice may be taken." *Wuxi Seamless Oil Pipe Co., Ltd. v. United States*, 780 F. Supp. 2d 1337, 1339 (Ct. Int'l Trade 2011) (quotations and citations omitted).

### C.   Preliminary Injunctions

A preliminary injunction is "an extraordinary remedy that may only be awarded upon *a clear showing* that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968 (1997) (per curiam)) (emphasis added). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20 (citing, *inter alia*, *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)).

Thus, if plaintiff fails to establish any one factor by a "clear showing," the motion must be denied. *Mazurek*, 520 U.S. at 972; *see also Shandong Huarong Gen. Group Corp. v. United States*, 122 F. Supp. 2d 143, 145 (Ct. Int'l Trade 2000). Accordingly, failure to prove any one of the four compels the denial of injunctive relief. *Winter*, 555 U.S. at 26 (denying injunctive relief based on public interest in national security); *Sumecht NA, Inc. v. United States*, 331 F. Supp. 3d 1408, 1412 (Ct. Int'l Trade 2018), *aff'd*, 923 F.3d 1340 (Fed. Cir. 2019) (failure to demonstrate immediate irreparable harm compels denial of request for preliminary injunction); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (plaintiff cannot be granted preliminary relief "unless it establishes *both* of the first two factors, *i.e.*, likelihood of

success on the merits and irreparable harm.") (emphasis in original) (citation omitted); *Otter*, 37

F. Supp. 3d at 1316 (inability to establish irreparable harm sufficient to deny injunction).

## II.     The Court Does Not Possess Jurisdiction To Grant Wheatland Any Relief Because Its Claims Are Moot

Wheatland claims that Customs failed to respond to its December 11, 2020 request for

information under 19 U.S.C. § 1516(a)(1) and its January 7, 2021 petition for a tariff

classification ruling under 19 U.S.C. § 1516(a). *See generally* Compl., ECF No. 4.  Wheatland

also seeks a writ of mandamus directing Customs to respond to its requests and an injunction

against the liquidation of entries of steel conduit pipe. *See* Pl. Mot., ECF Nos. 8, 8-1; Pl. Writ,

ECF No. 7.  Because Customs has already responded to Wheatland's classification requests,

Wheatland's requests for relief are moot.  Accordingly, the Court should dismiss this action.

### A.     Legal Standard

A Federal court may not grant injunctive or mandamus relief without first establishing

that it possesses jurisdiction to do so.  *Munaf*, 553 U.S. at 691 ("Review of a preliminary

injunction 'is not confined to the act of granting the injunction{n}, but extends as well to

determining whether there is any insuperable objection, in point of jurisdiction or merits'" to

granting such relief).  Because "{t}he question of jurisdiction closely affects the {plaintiff's}

likelihood of success on its motion for preliminary injunction," the Court may not "ignore {the

question} in ruling on {plaintiff's} preliminary injunction motion." *U.S. Ass'n of Importers of

Textiles & Apparel v. United States*, 413 F.3d 1344, 1348 (Fed. Cir. 2005); *see, e.g.*, *Qingdao

Barry Flooring Co., Ltd. v. United States*, 190 F. Supp. 3d 1274, 1276-77 (Ct. Int'l Trade 2016)

(dismissing petition for a writ of mandamus because the Court lacked jurisdiction).

"Mootness is a jurisdictional question because the Court is not empowered to decide

moot questions or abstract propositions." *North Carolina v. Rice,* 404 U.S. 244, 246 (1971)

(internal quotations and citation omitted).  A suit becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotations and citations omitted); *Qingdao Barry Flooring Co., Ltd.*, 190 F. Supp. 3d at 1275 ("A federal court may exercise the judicial power granted by Article III of the Constitution only in the presence of an actual case or controversy.") (citing U.S. CONST., art. III, § 2).  "In order to satisfy the case or controversy requirement, 'a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision.'"  *Verson v. United* States, 5 F. Supp. 2d 963, 966 (Ct. Int'l Trade 1998) (quoting *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 70 (1983)).  A claim that has become moot must be dismissed for lack of subject-matter jurisdiction.  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 78-79 (2013); *Chafin*, 568 U.S. at 172.

**B.**   **Customs Responded To Wheatland's December 2020 Request**

Wheatland's claims are moot because Customs has already provided Wheatland with the relief it is seeking from this Court.

Related to Wheatland's December 2020 request, Customs responded to that request seeking the classification and the rate of duty imposed upon designated imported merchandise pursuant to 19 U.S.C. § 1516(a)(1).  That statute provides, in relevant part:

> The Secretary shall, upon written request by an interested party furnish the classification and the rate of duty imposed upon designated imported merchandise of a class or kind manufactured, produced, or sold at wholesale by such interested party.  *If* the interested party believes that the appraised value, the classification, or rate of duty *is not correct*, it may file a petition with the Secretary{.}

19 U.S.C. § 1516(a)(1) (emphasis added).

In its January 22, 2021 response, Customs informed Wheatland that it had liquidated entries of certain steel conduit pipe under the tariff classification code advocated by Wheatland, and that it was defending those liquidations in this Court in the *Shamrock* case.  A2.  Because Wheatland's request specifically identified merchandise imported by Shamrock, even citing the *Shamrock* Complaint, Customs reminded Wheatland that the issue of the classification of steel conduit pipe would ultimately be decided by the Court.  *Id.*  Thereafter, in its April 9, 2021 response, Customs unequivocally stated its position that steel conduit pipe imported from Mexico, with or without interior coating, where any such coating does not have insulation properties, is classified under HTS 7306, irrespective of the date of entry.  Pl. Mot. Ex. 7.  Thus, Customs complied with Section 1516(a)(1)'s requirement that Customs shall "furnish the classification and rate of duty imposed upon designated imported merchandise."  19 U.S.C. § 1516(a)(1).

Moreover, because there was no disagreement between Customs and Wheatland as to the classification and rate of duty of the designated imported merchandise, a petition by Wheatland under Section 1516(a) was not warranted.  Section 1516(a)(1) states that, following a request that the agency furnish the classification and rate of duty imposed on designated imported merchandise, "*{i}f* the interested party believes that the appraised value, the classification, or rate of duty *is not correct*, it may file a petition{.}"  *Id.* (emphasis added).  In its December 2020 submission to Customs, Wheatland did not claim that it believed Customs' classification and rate of duty imposed on the designated steel conduit pipe was incorrect.  Indeed, Customs had taken the position that conduit steel conduit pipe, with or without interior coating, where any such coating does not have insulation properties, should be classified under HTS 7306, which is entirely consistent with the position advocated by Wheatland.  A2; Pl. Mot. Ex. 7.  Accordingly,

there is no statutory basis for a petition under Section 1516(a) and, thus, no corresponding

obligation that Customs respond.  Because Customs has fully complied with its statutory

obligations related to Wheatland's December 2020 request, there is no live case or controversy,

and this action should be dismissed on mootness grounds.  *See Qingdao Barry Flooring Co.,*

*Ltd.*, 190 F. Supp. 3d at 1276 (in dismissing an action for a writ of mandamus on mootness

grounds, holding that "{t}he claim as set forth in plaintiff's complaint and the subsequent actions

by Commerce remove any doubt that this action is moot").

C.    **Customs Responded To Wheatland's January 2021 Request**

Similarly, Customs responded to Wheatland's January 7, 2021 request that Customs

reconsider Customs Ruling Letter N306508.

Part 177 of Title 19 of the Code of Federal Regulations governs Customs' authority to

correct classification rulings and provides that:

> An interpretive ruling, which includes an internal advice decision,
> issued under this part, or a holding or principle covered by a
> protest review decision issued under part 174 of this chapter, if
> found to be in error or not in accord with the current views of
> Customs, may be modified or revoked by an interpretive ruling
> issued under this section.

19 C.F.R. § 177.12; *see also* 19 U.S.C. § 1625(c) (stating that a proposed ruling that would

modify or revoke a prior interpretive ruling or decision must be published in the Customs

Bulletin, and that parties must be allowed an opportunity to comment).  However, Customs will

not issue a ruling when the classification issue is pending before this Court:  "No ruling letter

will be issued with respect to any issue which is pending before the United States Court of

International Trade, the United States Court of Appeals for the Federal Circuit or any court of

appeal therefrom."  19 C.F.R. § 177.7(b).

In its April 9, 2021 letter, Customs recognized that it may correct a classification, but concluded that 19 C.F.R. § 177.7(b) precluded it from doing so because the classification issue was pending before this Court in the *Shamrock* case.  Pl. Mot. Ex. 7.  Although Wheatland takes issue with Customs' response to this request (*see* Pl. Mot. at 13; Compl. ¶ 34), Customs responded to the extent required by statute and regulation.  *See Qingdao Barry Flooring Co., Ltd.*, 190 F. Supp. 3d at 1277 (in dismissing an action for a writ of mandamus on mootness grounds, observing that the importer's challenges to the lawfulness of Commerce's actions "are objections as to *how* the review was conducted, not as to *whether* the review was conducted) (emphasis in the original); *Diamond Sawblades Mfrs. Coalition v. United States*, 650 F. Supp. 2d 1331, 1353 (Ct. Int'l Trade 2009) (denying plaintiff's "request for a writ of mandamus as it applies to the ITC" on mootness grounds "because the ITC's affirmative determination has been published").  Thus, because Customs has fully complied with its statutory and regulatory obligations related to Wheatland's January 2021 drequest, there is no live case or controversy to decide.

***

Because Customs has already responded to Wheatland's December 2020 and January 2021 requests, this action is moot, and this Court does not possess jurisdiction to provide Wheatland with the injunctive and mandamus relief it seeks.  Accordingly, this action should be dismissed.  *See, e.g.*, *Qingdao Barry Flooring Co., Ltd.*, 190 F. Supp. 3d at 1277.

### III.   <u>Wheatland Has Not Demonstrated That It Is Entitled To Injunctive Relief</u>

In the event that this Court concludes that it possesses jurisdiction, this Court should nevertheless deny Wheatland's motion for a preliminary injunction because it has failed to demonstrate that it is entitled to such extraordinary relief under the governing four-factor test.

### A.    Wheatland Has Failed To Establish A Likelihood Of Success On The Merits

Wheatland is unlikely to succeed on the merits because it fails to state a claim for which relief can be granted.  In particular, Wheatland fails to state a claim for a violation of 19 U.S.C. § 1516 because Customs: (1) lawfully responded to Wheatland's requests that Customs furnish the classification and rate of duty for steel conduit pipe; (2) had no legal basis for responding to a petition pursuant to Section 1516(a)(1) because there was no disagreement between Customs and Wheatland as to the correct classification and rate of duty for steel conduit pipe; and (3) lawfully refused to reconsider Customs Ruling Letter N306508 because the classification issue was pending before this Court in the *Shamrock* litigation.  Because Wheatland's claims fail to state a claim on which relief can be granted, Wheatland is unlikely to succeed on the merits and, accordingly, its motion for a preliminary injunction should be denied.

### 1.    Wheatland Fails To State A Claim For A Violation Of Section 1516(a)(1) Because Customs Responded To Wheatland's December 11, 2020 Request For A Classification And Rate Of Duty

Wheatland contends that Section 1516(a)(1) affords it with a "statutory right to an answer from Customs on the classification of the merchandise," a right that Customs failed to meet "in a meaningful manner."  Pl. Mot. at 15.  As demonstrated below, Customs complied with the statute.

As discussed above, Section 1516(a)(1) requires Custom to respond to written requests from interested parties seeking the classification and the rate of duty for imported merchandise. 19 U.S.C. § 1516(a)(1).  "*If* the interested party believes that the appraised value, the classification, or rate of duty *is not correct*, it may file a petition with the Secretary{.}"  *Id.* (emphasis added).  Thus, a petition under Section 1516(a)(1) is warranted only if an interested party believes Customs' classification of the imported merchandise is incorrect.

As explained in Part II above, Customs complied with Section 1516(a)(1) by providing Wheatland with the requested classification. On January 22, 2021, Customs informed Wheatland that it had liquidated entries of certain steel conduit pipe imported by Shamrock between April 26, 2019, through July 19, 2019 under either HTS 7306.30.10 or HTS 7306.30.50, depending on whether the wall thickness of the pipe was less than 1.65 mm. A2. Customs further informed Wheatland that, in response to the classification, Shamrock had filed an action in this Court, challenging the classification of its steel conduit pipe under those tariff provisions, and that, as a result, the classification issue would be decided by this Court. *Id.* Thereafter, in an April 9, 2021 letter, Customs repeated that, to the extent Wheatland has sought information on certain designated imported merchandise, Customs' "position is that the merchandise is classified in heading 7306, HTSUS, irrespective of the date of entry." Pl. Mot. Ex.7. Customs also explained that it was "currently defending that position in" this Court. *Id.*

Moreover, that portion of Section 1516(a)(1) governing petitions is not implicated by the facts of this case. Wheatland had no basis to argue that Customs' classification and rate of duty on any designated imported merchandise was "not correct," because Wheatland agreed with Customs' classification. Thus, there was no statutory basis for a petition.

Because Customs has already fully complied with Wheatland's requests, Wheatland fails to state a claim for a violation of Section 1516(a)(1), and the action likely will be dismissed for failure to state a claim. Accordingly, Wheatland cannot demonstrate that it is likely to succeed on the merits of its claim that Customs failed to respond to its December 2020 request.

### 2. Customs Lawfully Refused Wheatland's January 7, 2021 Request To Reconsider The Customs Ruling Letter Because The Classification Issue Is Pending Before This Court

Wheatland also alleges that Customs failed to respond to its January 2021 request for reconsideration of the Customs Ruling Letter N306508 concerning the classification of steel conduit pipe from Thailand.  Pl. Mot. at 15-16.  This claim lacks merit.

Customs responded to Wheatland's request, explaining that Customs was foreclosed by regulation from reconsidering the Customs Ruling Letter in light of the pending *Shamrock* litigation.  Although recognizing that it may correct a classification, in its April 9, 2021 letter, Customs concluded that it was precluded from doing so pursuant to 19 C.F.R. § 177.7(b) because the classification issue was pending in this Court.  *See* Pl. Mot. Ex. 7.[3]

Wheatland dismisses Customs' reliance on 19 C.F.R. § 177.7(b), characterizing it as a means "to provide cover to its lack of action."  Pl. Mot. at 13.  But Customs was acting within its authority, and indeed, Wheatland points to no statutory requirement for Customs to issue or revoke a ruling.  As we explained above, Customs may not issue a ruling (including a ruling modifying or revoking a prior ruling) when the classification issue is pending before this Court: "{n}o ruling letter will be issued with respect to any issue which is pending before the United States Court of International Trade, the United States Court of Appeals for the Federal Circuit or any court of appeal therefrom."  19 C.F.R. § 177.7(b).  This Court has recognized that Customs possesses the authority to refuse to issue rulings when a classification issue is pending in this Court.  *See Hitachi Home Electronics (America), Inc. v. United States*, 704 F. Supp. 2d 1315,

---

[3] As discussed above, although calling the Court's attention to Customs Ruling Letter N306508, Wheatland recognizes that Customs has issued other rulings classifying steel conduit tubing with interior coating of epoxy resin or similar material under HTS 7306, consistent with the position taken in the *Shamrock* litigation.  *See* Pl. Mot. at 7.

1316 n.2 (Ct. Int'l Trade 2010) ("Interpreting these regulations broadly, Customs has developed an administrative practice of declining to rule on any protest involving an issue in a pending case before this Court, even if the protesting party is not one of the parties to the court case.");

*Depersia v. United States*, 637 F. Supp. 2d 1244, 1249 n.7 (Ct. Int'l Trade 2009) (recognizing that "§ 177.7(a) and (b) describe the circumstances under which Customs may refuse to consider such a request" for a prospective ruling); *National Corn Growers Ass'n v. Baker*, 636 F. Supp. 921, 954 (Ct. Int'l Trade 1986) ("The September 4 letter to Customs and the September 6 letters to Citicorp cannot be construed as a request for, and the issuance of, ruling letters since this case had already been commenced on August 29th.  According to 19 C.F.R. § 177.7(b), no ruling letter will be issued with respect to any matter which is pending before this Court of International Trade."), *rev'd on other grounds*, 840 F.2d 1547 (Fed. Cir. 1988); *Vivitar Corp. v. United States*, 593 F. Supp. 420, 424 n.7 (Ct. Int'l Trade 1984) ("{T}he Customs Service will not issue a letter ruling involving any issue while the issue is being litigated before this court.") (citing 19 C.F.R. § 177.7).

Section 177.7(b) is a common-sense regulation.  First, the regulation avoids having the agency issue a ruling which may be affected by a classification decision pending before this Court.  If a classification issue is pending before this Court, there is no need to have the agency expend resources in issuing rulings, which may be invalidated by a decision of this Court.  Second, the regulation avoids potentially inconsistent positions being taken by the United States.

In sum, Customs not only responded to Wheatland's January 2021 request for reconsideration of the Customs Ruling Letter, Customs appropriately exercised its authority to refuse to issue a ruling in light of the pending *Shamrock* litigation.  Because Wheatland fails to

state a claim that Customs violated any statute or regulation, the likelihood of success factor

weighs against Wheatland.

**B.**      **Wheatland Has Not Demonstrated The Likelihood Of Irreparable Harm**

Wheatland has failed to demonstrate that it will suffer "irreparable injury during the

pendency of the litigation if the preliminary injunction is not granted." *Rosemount, Inc. v. Int'l

Trade Commission*, 910 F.2d 819, 821 (Fed. Cir. 1990).  Wheatland alleges nothing more than

speculative, unsupported claims of harm.  *See* Pl. Mot. at 16-19.  In doing so, Wheatland's

request fails to meet the purpose of a preliminary injunction, which is "to protect the status quo

and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the

court's ability to render a meaningful judgment on the merits." *United States v. South Carolina*,

720 F.3d 518, 524 (4th Cir. 2013).

A plaintiff seeking an injunction bears an "extremely heavy burden" to establish

irreparable injury.  *Shandong Huarong Gen'l Grp.*, 122 F. Supp. 2d at 146.  To satisfy this

standard, Wheatland must offer more than "speculative" evidence; it must demonstrate that it

faces an "immediate and viable" threat of irreparable harm.  *Otter Products, LLC v. United

States*, 37 F. Supp. 3d 1306, 1315 (Ct. Int'l Trade 2014) (quoting *Kwo Lee, Inc. v. United States*,

24 F. Supp. 3d 1322, 1326 (Ct. Int'l Trade 2014)); *Sumecht*, 331 F. Supp. 3d at 1412 (citing

*Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983)).  As the Federal Circuit

explained in *Zenith*:  "A preliminary injunction will not issue simply to prevent a mere

possibility of injury, even where prospective injury is great.  A presently existing actual threat

must be shown."  710 F.2d at 809 (citation omitted).  "{T}he threat of irreparable harm must be

'demonstrated by probative evidence,'" and "'cannot be determined by surmise.'"  *Otter*, 37 F.

Supp. 3d at 1315 (quoting *Am. Inst. for Imported Steel Inc. v. United States,* 600 F. Supp. 204,

209 (Ct. Int'l Trade 1984) and *Elkem Metals Co. v. United States,* 135 F. Supp. 2d 1324, 1331 (Ct. Int'l Trade 2001)).  Thus, "{t}he court must deny a preliminary injunction where the plaintiff fails to present evidence that the alleged injuries are likely to occur." *Otter*, 37 F. Supp. 3d at 1315.

As a preliminary matter, Wheatland raises claims of harm for which this Court cannot provide redress through a preliminary injunction.  As discussed above, the purpose of a preliminary injunction is to preserve the status quo and prevent irreparable harm to a plaintiff while its suit is pending, thereby preserving the Court's ability to render a meaningful judgment on the merits.  Although couching its harm claims in terms of Customs' alleged failure to respond to its December 2020 and January 2021 requests, at bottom, Wheatland's harm claims are based on what it views as the ineffective monitoring of imports and enforcement of the President's national security measures on imported steel.  *See* Pl. Mot. at 2-3, 8-14, 17-19. Those harms, even if accepted as true, however, are untethered to any alleged failure by Customs to respond to its requests.  Thus, there is no basis for preliminary injunctive relief.  In fact, the injunctive relief that Wheatland seeks — the suspension of liquidation during the pendency of this litigation — will do nothing to stem the harm Wheatland claims from the ineffective monitoring of imports and enforcement of the President's national security measures.

Moreover, this Court plays no role in assessing whether the import monitoring program is effective; that is a judgment call left entirely within the President's discretion.  *See Proclamation 9705*, 83 Fed. Reg. at 11,628 (directing the Secretary of Commerce to monitor imports and advise the President if additional action is necessary); *Silfab Solar, Inc.*, 892 F.3d at 1349 (explaining that the President's exercise of judgment and findings of fact are not subject to judicial review).

Even if the Court concludes that it can address Wheatland's claimed harms through a preliminary injunction, Wheatland fails to demonstrate irreparable harm.  In support of its irreparable-harm claims, Wheatland alleges direct harm to its business in the United States through "lost bids on major projects, lost sales volume, and, in turn, lost production and employment."  Pl. Mot. at 17-19.  Wheatland relies on the affidavit of Jim Hays, the President of Electrical at Zekelman Industries (Zekelman), whose role includes complete profit and loss management responsibility for Wheatland Tubes and other electrical businesses owned by Zekelman Industries.  Pl. Mot. Ex. A, ¶ 1.  As demonstrated below, the Hays Affidavit does not establish irreparable harm.

First, Mr. Hays claims irreparable harm to Zekelman's companies based on allegations related to volume:  that the companies' volume has fallen by over 20,000 tons; that due to the ongoing reduction in volume, the companies have shut down their plants in Chicago, Illinois and Long Beach, California for a week in December, resulting in $1.1 million of unabsorbed costs and the furloughing of 400 employees; and that Mexican producers continue to price their product 20% to 30% below prevailing U.S. market prices to increase volume and share.  Pl. Mot. Ex. A, ¶¶16, 19.  Although voluminous, Wheatland's exhibits to its motion offer no probative evidence in support of these alleged harms.  In particular, Wheatland attaches no financial records or any other admissible evidence that could put the statements in context.

Wheatland's failure to provide probative evidence dooms its claims of irreparable harm, as does its failure to establish "'a viable threat of serious harm which cannot be undone.'" *Sumecht*, 331 F. Supp. 3d at 1412 (quoting *Zenith*, 710 F.2d at 809); *id.* (rejecting claims of irreparable harm because "[p]laintiff's perceived financial harm is hypothetical and unsubstantiated"); *see also, e.g.*, *Shandong*, 122 F. Supp. 2d at 1371 (affidavits declaring harm

are insufficient when unsupported by concrete evidence); *Confederación de Asociaciones Agrícolas del Estado de Sinaloa, A.C. v. United States*, 389 F. Supp. 3d 1386, 1400 (Ct. Int'l Trade 2019) (explaining that "{t}he court finds that Plaintiffs' evidence concerning lost sales is supported by mere generalized statements as to trends in the industry and estimated percentages of growers, importers, and exporters affected, and that Plaintiffs' evidence regarding lost sales is unspecific and inconclusive as to the immediate, irreparable harm Plaintiffs will suffer absent injunctive relief."); *Int'l Fresh Corp. v. United States*, 26 F. Supp. 3d. 1363, 1368 (Ct. Int'l Trade 2014) ("Without more, affidavits from interested parties may be considered weak evidence, unlikely to justify a preliminary injunction.") (internal quotations and citation omitted); *id.* (rejecting a claim of irreparable harm in which plaintiff produced "neither independent evidence nor witnesses for cross examination to support its affidavits" and failed to provide "financial statements to prove lack of necessary capital reserves").

Furthermore, this Court repeatedly has declined to find irreparable harm based merely on claims of financial losses. *See, e.g.*, *Corus Group PLC v. Bush*, 217 F. Supp. 2d 1347, 1355 (Ct. Int'l Trade 2002) (concluding that threat of "economic injury" does not constitute irreparable harm). And this Court has specifically rejected claims related to lost volume that fail to show how this constitutes irreparable harm. *See Confederación de Asociaciones Agrícolas del Estado de Sinaloa, A.C.*, 389 F. Supp. 3d at 1401 ("Upon review of all Plaintiffs' evidence concerning the loss of export volume, the court concludes that Plaintiffs have not met their burden to show how loss of export volume constitutes irreparable harm.").

Indeed, Wheatland effectively concedes the speculative nature of its "harm" allegations in asserting that it has "eliminated 16 full time positions *with additional reductions planned*." Pl. Mot. Ex. A, ¶ 16 (emphasis added). Not only has Wheatland failed to show how the elimination

of 16 full-time positons is irreparable, its allegations about "planned" reductions is speculative.

If speculative and conclusory claims of economic harm were sufficient to demonstrate

irreparable harm, the Court would be required to find irreparable harm in almost every case.  As

this Court has recognized, "the mere threat of an adverse economic impact" cannot establish

irreparable harm because it would "effectively create a *per se* irreparable harm rule in similar

challenges — a result likely contrary to the extraordinary nature of the remedy." *Corus Group*

*PLC*, 217 F. Supp. 2d at 1355 (citing *Am. Spring Wire Corp. v. United States*, 578 F. Supp. 1405,

1408 (Ct. Int'l Trade 1984)).

Wheatland also claims irreparable harm based on the competitive harm being faced by

the domestic steel industry, and contends that "Mexican conduit exporters are expanding capacity

to take advantage of the misclassification loophole being held open by Customs."  Pl. Mot. at 18-

19.  As a preliminary matter, it is difficult to discern what "misclassification loophole {is} being

held open by Customs."  As reflected in Customs' January 2021 and April 2021 letters,

Customs' position on the classification of conduit is consistent with Wheatland's position, and

the Government is defending this position in the *Shamrock* litigation.  *See* A2; Pl. Mot. Ex. 7; *see*

*also* Compl. ¶ 46, *Shamrock Building Materials, Inc. v. United States*, No. 20-00074 (Ct. Int'l

Trade), ECF No. 10 (challenging Customs' Form 29 Notices of Action "advising Plaintiff that

CBP had concluded that the more appropriate classification for Plaintiff's entries of finished

conduit is 7306.30.5028, and instruct{ing} Plaintiff to use this classification for all current and

future entries"); *id.* ¶ 40 (substantially same); *Shamrock Building Materials, Inc.*, 540 F. Supp.

3d at 1352 ("Shamrock brought this action to contest the denial by U.S. Customs and Border

Protection ('Customs') of its protests directed to the tariff classification by Customs of its

imported merchandise, which Shamrock describes as "certain electrical conduit.").  If Wheatland

genuinely seeks a resolution of this classification issue, the appropriate course of action is to await this Court's disposition of *Shamrock*. But even assuming the existence of a "misclassification loophole" that is allowing otherwise covered steel to enter the United States duty free, this claim is irrelevant; in this action, the Court cannot order Customs to retroactively reclassify entries and collect duty deposits.

In any event, Wheatland fails to explain how "competitive harm" constitutes a "presently existing, actual threat." *See Zenith*, 710 F.2d at 809. Nor do such claims reflect particularized harm to Wheatland. *See id.* (the focus of irreparable injury analysis is on the harm to the plaintiff). This Court has rejected a claim that competitive injury constitutes irreparable harm. *See J. Conrad LTD v. United States*, 457 F. Supp. 3d 1365, 1381 (Ct. Int'l Trade 2020) (holding that a claim or irreparable harm based on competitive injury was "unconvincing because it is merely a generalized statement without any evidentiary support").

Wheatland also contends that it is being irreparably harmed by a lack of meaningful judicial review as a result of the entries already occurring under the improper HTS classification. Pl. Mot. at 17-18. But the classification issue is receiving meaningful judicial review in the *Shamrock* litigation. Thus, whether these imports are "misclassified" will ultimately be decided by the Court when it reviews the entries at issue in *Shamrock*. Furthermore, Wheatland has not established, nor could it establish, the extent of any misclassification or the impact on Wheatland. Rather, Wheatland relies on mere speculation when claiming that all of the merchandise entering under HTS 8547.90 is misclassified.

That Wheatland has exhausted the remedies available pursuant to Section 1516(a)(1) and must now await this Court's disposition of the *Shamrock* litigation does not rise to irreparable harm. Such a claim is tantamount to alleging irreparable harm based on the available remedies

under the statute and regulations.  But "delays inherent in the statutory process" do not warrant the extraordinary remedy of an injunction against the Government.  *Int'l Customs Prods. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006).

Further undermining Wheatland's harm claim is the fact that nine months have elapsed since Customs' April 2021 response.  *See* Pl. Mot. Ex. 7.  It is "reasonable for the {trial} court to consider the issue of delay and to find that {the plaintiff} had not proceeded as quickly as it could have in seeking preliminary injunctive relief."  *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 678 F.3d 1314, 1326 (Fed. Cir. 2012); *High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995); *Hawpe Const., Inc. v. United States*, 46 Fed. Cl. 571, 582 (2000) (same).  Delay in seeking injunctive relief "implies a lack of urgency and irreparable harm."  *Oakland Tribune Inc. v. Chronicle Publ'g Co., Inc*., 762 F.2d 1374, 1377 (9th Cir.1985).  Here, Wheatland's nine-month delay in bringing suit undercuts Wheatland's claimed need for injunctive relief.

Because Wheatland's claims of irreparable harm are either speculative or are unsupported by probative evidence, it has failed to establish immediate, irreparable harm.  Accordingly, on this basis alone, the Court should deny Wheatland's request for a preliminary injunction.

### C.    The Balance Of Hardships Weighs In Favor Of Denying Wheatland's Motion

Contrary to Wheatland's contentions, the balance of hardships does not weigh in its favor.  Pl. Mot. at 20.

Wheatland contends that the United States will face only "inconvenience" from the grant of preliminary injunctive relief while the hardships Wheatland faces "include continued yet preventable competitive harm and a loss of the opportunity to meaningfully challenge the improper classification of these imports during the period that challenge need be made."  Pl.

Mot. at 20.  But, as we demonstrated above, Wheatland has not supported its harm claims with any specific, much less probative, evidence.  As for its claim as to the loss of "the opportunity to meaningfully challenge" an improper classification, this Court's resolution of the *Shamrock* litigation will resolve the classification issue.  Moreover, by congressional design, Wheatland, as a domestic party, cannot intervene in the *Shamrock* action brought under Section 1581(a) and, thus, Wheatland should not be permitted to bring an action under Section 1581(i) to circumvent the limits of Section 1581(a).  *See Norcal/Crosetti Foods v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992) (observing that 28 U.S.C. 1581(i) is to be narrowly construed so as to give effect to "congressionally mandated procedures and safeguards").

Furthermore, the Government would be harmed if enjoined.  Customs is in the process of reviewing imported merchandise to ensure it is classified consistent with the agency's position in *Shamrock*.  In the normal course, if Customs determines that merchandise entered under subheading 8547.90 is in fact misclassified and should be correctly classified under heading 7306, Customs would correct the misclassification, liquidate entries of such merchandise under heading 7306, and issue bills to the importers.  However, because Wheatland's proposed injunction would enjoin Customs from liquidating *all* entries of steel pipe conduit entered under subheading 8547.90 for the pendency of this litigation, the proposed injunction would prevent Customs from correcting any misclassifications, liquidating entries of such merchandise under the correct heading (HTS 7306), and issuing bills to the importers.  As a result, Customs would be precluded from timely liquidating entries of merchandise entered under subheading 8547.90 and issuing bills for Section 232 duties when Customs determines that the merchandise is misclassified and should be classified under heading 7306.  Because such importers will likely continue to enter merchandise under subheading 8547.90 without making a deposit of Section

232 duties, there is a risk that these importers will not be able to pay the increased duty amounts

if Customs is not allowed to promptly assess or collect these amounts and instead must wait until

the litigation is final.  Thus, the balance of hardships does not weigh in favor of granting

injunctive relief.

      **D.**      <u>**The Public Interest Factor Weighs In Favor Of Denying Wheatland's Motion**</u>

Contrary to Wheatland's contentions, the public interest factor does not weigh in favor of

granting a preliminary injunction.  Pl. Mot. at 20.

 "In exercising their sound discretion, courts of equity should pay particular regard for the

public consequences in employing the extraordinary remedy of injunction."  *Weinberger v.*

*Romero-Barcelo*, 456 U.S. 305, 312 (1982).

Wheatland cannot meet its burden of establishing that the public interest will be served

by the issuance of an injunction because, as demonstrated above, Customs acted well within its

statutory and regulatory authority in responding to Wheatland's requests.  But the public interest

of the United States will suffer if a preliminary injunction were granted.  The United States will

be harmed if one of its agencies (here, Customs) is not permitted to exercise its responsibilities

under the statutes and regulations it is charged with administering and enforcing.  In particular,

issuance of an injunction would have the end result of interfering with Customs' responsibilities

and authority under Section 1516 and Section 177.7(b).  Such an outcome is against the public

interest.

The public interest factor also weighs in favor of the United States because the injunction

that Wheatland seeks is overly broad in that it would suspend the liquidation of entries from

importers unrelated to any party in this or the *Shamrock* litigation.  In seeking to enjoin any

unliquidated entries of steel conduit pipe entered into the United States under HTS 8547.90 for

the pendency of this litigation, Wheatland's proposed injunction will include merchandise from unrelated importers that may be appropriately classified under HTS 8547.90.

Furthermore, Wheatland is in no different a position than any other domestic producer of steel conduit pipe who is affected by any alleged evasion of the import monitoring scheme governing imports of steel products from Mexico.  Granting Wheatland's motion will only encourage other parties to attempt to circumvent the congressionally-mandated options available to domestic interested parties by raising the very same claim related to this or other classifications based on frustrations with the pace of available legal remedies.  But the Federal Circuit has held that "delays inherent in the statutory process," do not warrant the extraordinary remedy of an injunction against the United States.  *Int'l Customs Prods*, 467 F.3d at 1327.

Thus, the public interest does not weigh in favor of granting Wheatland's motion.

\*\*\*

In sum, even if Wheatland carries its burden of establishing this Court's jurisdiction to hear its claims, Wheatland has not demonstrated that it is entitled to a preliminary injunction.

### E.    Wheatland Should Be Required To Post Security In The Event Injunctive Relief Is Granted

If the Court were to issue a preliminary injunction, it may only do so "if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  USCIT R. 65(c).  Despite this requirement in the Court's rule, Wheatland's motion fails to address the requirement of security.  Should the Court enter a preliminary injunction, we request that the Court require Wheatland to post a bond in an amount that the Court determines to be appropriate.  Such an order would ensure that the Court follow the directive that it "must narrowly tailor an injunction to fit the specific adjudged violations," *Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir.

2002) (citing *Gemveto Jewelry Co. v. Jeff Cooper Inc.*, 800 F.2d 256, 259, 230 (Fed. Cir. 1986)), while ensuring minimal protection of the United States' interests.

**IV.**     **The Court Should Deny Wheatland's Petition For A Writ Of Mandamus**

Wheatland seeks a writ of mandamus compelling Customs to respond to its December 11, 2020 request for information under 19 U.S.C. § 1516(a)(1) and its January 7, 2021 petition for a tariff classification ruling under 19 U.S.C. § 1516(a).  Pl. Writ, ECF No. 7.  As discussed above, this Court does not possess jurisdiction to entertain Wheatland's petition.  And, in the event the Court concludes that it does possess jurisdiction, Wheatland has failed to state a claim for mandamus.

"The court has authority to issue a writ of mandamus under 28 U.S.C. §§ 1361, 1651(a)." *Fresh Garlic Producers Association v. United States*, 190 F. Supp. 3d 1302, 1305 (Ct. Int'l Trade 2016).  Mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes."  *Cheney v. United States Dist. Court*, 542 U.S. 367, 380 (2004) (internal quotations omitted).  The "requirements for issuing a writ of *mandamus*" are: "(1) a clear duty on the part of the defendant to perform the act in question; (2) a clear right on the part of the plaintiff to demand the relief sought; and (3) an absence of an adequate alternative remedy."  *Timken Co. v. United States*, 893 F.2d 337, 339 (Fed. Cir. 1990) (citations omitted).  In addition, "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances."  *Cheney*, 542 U.S. at 381.

Mandamus may not be used to enlarge a Court's jurisdiction.  *See Clinton v. Goldsmith*, 526 U.S. 529, 534-35 (1999).  As we have demonstrated above, this Court does not possess jurisdiction to entertain Wheatland's requests for relief because they are moot; Customs has fully responded to Wheatland's December 2020 and January 2021 requests pursuant to Section 1516.

*See* A2; Pl. Mot. Ex. 7.  Accordingly, Wheatland is not entitled to a writ of mandamus.  *See*

*Qingdao Barry Flooring Co., Ltd.*, 190 F. Supp. 3d at 1276 (in dismissing an action for a writ of

mandamus on mootness grounds, holding that "{t}he claim as set forth in plaintiff's complaint

and the subsequent actions by Commerce remove any doubt that this action is moot"); *see also*

*Shandong Dongfang Bayley Wood Co., Ltd. v. United States*, 236 F. Supp. 3d 1346 (Ct. Int'l

Trade 2017) (dismissing action for writ of mandamus seeking to compel Commerce to take

certain actions because the Court lacked jurisdiction under this Court's "residual" jurisdiction

provision, 28 U.S.C. § 1581(i)).

In the event the Court determines it possesses jurisdiction, Wheatland fails to

demonstrate it is entitled to mandamus under the governing standard.  First, related to the

element requiring that Wheatland show "a clear duty on the part of the defendant to perform the

act in question," here, there was no clear duty on the part of Customs to do anything more than to

respond as it did through its January 2021 and April 2021 responses to Wheatland's submissions.

A2; Pl. Mot. Ex. 7.  Customs' responses informed Wheatland of Customs' classification of steel

conduit pipe, which was consistent with the classification that Wheatland was advocating.  *Id.*

Because Customs and Wheatland were in agreement as to the classification, there was no basis

for Wheatland to file a petition under the statute.  Based on its plain terms, Section 1516(a)(1)

contemplates a petition only "{i}f the interested party believes that the appraised value, the

classification, or rate of duty *is not correct*."  19 U.S.C. § 1516(a)(1) (emphasis added).  Thus,

Wheatland's claims that Customs had a "clear duty" to respond are without merit.  *See* Pl. Writ

at 3-4.

Related to the second element — "a clear right on the part of the plaintiff to demand the

relief sought," Customs has already responded to the December 2020 and January 2021 requests

at issue.  Although devoting pages to this element, Wheatland fails to discuss Customs' January

2021 and April 2021 responses, let alone why they were inadequate.  *See* Pl. Writ at 4-6.

Furthermore, Wheatland did not possess "a clear right" to lodge a Section 1516 petition when

there is no disagreement between Customs and Wheatland as to the classification of steel conduit

pipe.  *See* 19 U.S.C. § 1516(a)(1).

Related to the third element — "an absence of an adequate alternative remedy,"

Wheatland does possess an adequate alternative remedy:  this Court's disposition of the

*Shamrock* litigation will resolve the issue of the correct classification of the steel conduit pipe at

issue.  Any argument by Wheatland that awaiting disposition of *Shamrock* is inadequate should

be rejected.  *Cf. Int'l Customs Prods.*, 467 F.3d at 1327 (holding that "delays inherent in the

statutory process" do not warrant the extraordinary remedy of an injunction against the

Government).

In contending that it has no adequate alternative remedy (*see* Pl. Writ at 6-12), Wheatland

asserts that mandamus relief is warranted because Customs is required to "correct the

misclassification."  *Id.* at 10.  But there is nothing to correct; as discussed above, Customs'

January 2021 and April 2021 responses demonstrate that there is no disagreement between

Customs and Wheatland as to the classification of steel conduit pipe.  *See* A2; Pl. Mot. Ex. 7.

Because there is no classification that "is not correct," there is no basis for Wheatland to lodge a

Section 1516 petition (*see* 19 U.S.C. § 1516(a)(1)) and, accordingly, no relief to which

Wheatland is entitled.

In sum, even if Wheatland satisfies its burden of establishing this Court's jurisdiction to

entertain its petition for a writ of mandamus, Wheatland has failed to establish that it is entitled

to such extraordinary relief.

## **CONCLUSION**

For these reasons, we respectfully request that the Court grant our motion to dismiss this action for lack of subject-matter jurisdiction or, in the alternative, deny Wheatland's motion for a preliminary injunction and its petition for a writ of mandamus.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

OF COUNSEL:

MATHIAS RABINOVITCH
Attorney
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

/s/ Antonia R. Soares
ANTONIA R. SOARES
Senior Trial Counsel
Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Telephone:  (202) 305-7405
antonia.soares@usdoj.gov

February 2, 2022

Attorneys for Defendant

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 11,362 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

<u>/s/ Antonia R. Soares</u>